**BROWNING FERRIS INDUSTRIES OF PUERTO RICO, INC.,**
Plaintiff, Appellant,

v.

**UNION DE TRONQUISTAS, LOCAL 901,** Defendant, Appellee.

No. 94–1066.

United States Court of Appeals,
First Circuit.

July 11, 1994.

Jorge Rodriguez Micheo, with whom Goldman, Antonetti & Cordova was on brief, Hato Rey, PR, for appellant.

Miguel Cabrera Figueroa, Rio Piedras, PR, for appellee.

Before SELYA and CYR, Circuit Judges, and PETTINE,* Senior District Judge.

CYR, Circuit Judge.

Plaintiff Browning Ferris Industries of Puerto Rico, Inc. (BFI) appeals from a district court order dismissing its action to stay arbitration proceedings brought by defendant-appellee Union De Tronquistas, Local 901 (Union), relating to BFI's discharge of certain Union employees for participating in an alleged slowdown prohibited by the Collective Bargaining Agreement (CBA). The district court ultimately ruled that the dispute was subject to arbitration because no slowdown occurred. We affirm on the ground that the underlying contract dispute addressed by the district court must be submitted to arbitration in accordance with the CBA.

## I

### BACKGROUND

BFI operates a waste disposal facility in Cataño, Puerto Rico. The Union represents its drivers, mechanics and utility workers. After BFI dismissed four employees for allegedly participating in a "slowdown" prohibited by CBA § 15.01,[1] the Union initiated grievance proceedings on their behalf pursuant to the contract arbitration clause, CBA § 11.01. BFI in turn commenced the present action to stay arbitration, *see* Labor Man-

---

* Of the District of Rhode Island, sitting by designation.

1. CBA § 15.01 provides:
   Neither the Union nor employees covered herein shall at any time, including lunch hour, call, cause, sanction, participate in, permit, authorize, honor, instigate, support, assist or

condone any strike, sympathy strike, work stoppage, picketing, slowdown or other concerted and/or intentional effort to interfere with production, such as, but not limited to, an extension of lunch or rest periods or meetings during working hours.

agement Relations Act § 301(a), 29 U.S.C. § 185(a), claiming that CBA § 15.02 expressly exempts BFI's adverse employment action from contract grievance and arbitration procedures.

BFI promptly moved for summary judgment on the ground that the discharged employees had engaged in an action prohibited by CBA § 15.01, but the district court ruled that a genuine issue of material fact remained as to whether the employees had engaged in a "slowdown," and referred the matter to a magistrate-judge. Following an evidentiary hearing, the magistrate-judge recommended that the district court find that BFI had failed to prove a "slowdown," and further recommended that the dispute be submitted to arbitration. The district court adopted the magistrate-judge's report and recommendation over BFI's timely objection, and dismissed the action. On appeal, BFI challenges the district court order directing that the contract dispute be submitted to arbitration.

## II

### *DISCUSSION*

■■■ Whether a collective bargaining agreement requires the parties to arbitrate a particular dispute is a matter of contract interpretation entrusted in the first instance to trial court determination, *AT & T Technologies v. Commun. Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *Bechtel Constr., Inc. v. Laborers' Int'l Union,* 812 F.2d 750, 752 (1st Cir.1987), subject to *de novo* review, *see Local 149 of Am. Fed'n of Tech. Eng'rs v. General Elec. Co.,* 250 F.2d 922, 929 (1st Cir.1957), *cert. denied,* 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958). We need not address the sufficiency *vel non* of the district court finding that BFI failed to prove a prohibited slowdown—a matter on which we take no view— since that dispute must be submitted to arbitration notwithstanding CBA § 15.02.

There is nothing ambiguous about section 15.02:

*Any employee engaging in any* such *action* as *set forth in Section 15.01 shall be subject to disciplinary action,* including immediate discharge, at the sole discretion of the Company *and any action taken by the Company shall not be subject to the grievance and arbitration* procedure contained in [Section 11.01].

(Emphasis added). Its plain language, read together in its entirety, *see Commercial Union Ins. Co. v. Walbrook Ins. Co.,* 7 F.3d 1047, 1051 n. 6 (1st Cir.1993), adverts to two potential issues between the contracting parties. The first clause conditions the employer's right to take disciplinary action under section 15.02 on the occurrence of an employee action prohibited by section 15.01; the last clause makes it clear that the only employer action exempted from grievance and arbitration under CBA § 11.01 is a disciplinary action against an employee who has violated section 15.01.

The interpretation advanced by BFI disregards the entire first clause in section 15.02, *see Jimenez v. Peninsular & Oriental Steam Nav. Co.,* 974 F.2d 221, 223 (1st Cir.1992) ("In construing contract language, we endeavor to render no term meaningless.") (citing cases), which plainly preconditions the employer's unilateral right to discipline an employee on a determination that the employee has violated section 15.01. Next, it *gratuitously assumes* that the last clause in section 15.02 vests the employer, *sub silentio,* with unfettered discretion to determine whether the employee violated section 15.01, *e.g.,* by participating in a prohibited slowdown, without any right of recourse to grievance or arbitration procedures. *But see Cofman v. Acton Corp.,* 958 F.2d 494, 497 (1st Cir.1992) (applying *"inclusio unius est exclusio alterius"*).

The interpretation urged by BFI contravenes not only the governing rules of contract construction, *see, e.g., Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund,* 967 F.2d 688, 694 (1st Cir.1992) (construing CBA in accordance with general contract law), but the Supreme Court's admonition that "where the [CBA] contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). In this case, we could not say with *any* assurance at all that section 15.02 permits the employer to determine, unilaterally and conclusively, that section 15.01 has been violated by the employee.

Finally, the interpretation proposed by BFI would lead to the absurd result that *any* employee could be discharged at *any* time, with *no* right of recourse to grievance or arbitration procedures, simply on the employer's "say-so" that the employee had engaged in conduct prohibited by section 15.01. An interpretation so at odds with the role of collective bargaining in labor-management relations would give us serious pause even assuming some plausible textual basis in the collective bargaining agreement. The utter absence of textual support agreeably precludes any interpretive quandary.

For the foregoing reasons, the district court order is ***affirmed.***