Loenco v. Londonderry, et al.        CV-95-455-M    12/14/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Loenco, Inc.,
      Plaintiff

      v.                                    Civil No. 95-455-M

Town of Londonderry, Board of
Sewer Commissioners,
Hoyle, Tanner & Associates, and
Pace Industries, Inc.,
      Defendants


O R D E R

In accordance with the special jury verdict returned on
February 13, 1998, the court entered judgment in favor of
plaintiff, Loenco, Inc., and against defendants in the amount of
$300,000, as follows: $225,000 against Hoyle, Tanner & Associates
("HTA") and the Town of Londonderry, jointly and severally, and
an additional $75,000 against the Town.  The Town and HTA filed
timely motions for judgment as a matter of law, a new trial, or
remittitur.  Loenco objects.


**Standard of Review**

The Federal Rules of Civil Procedure authorize the district
court to enter judgment as a matter of law "if there is no
legally sufficient evidentiary basis for a reasonable jury to
find for [the non-moving] party on that issue."  Fed. R. Civ. P.
50.  When ruling upon a post-trial motion for judgment as a
matter of law, the court must view the evidence presented at
trial, and all reasonable inferences which might be drawn from

that evidence, in the light most favorable to the jury's verdict. Veranda Beach Club Ltd. Partnership v. Western Surety Co., 936 F.2d 1364, 1383-84 (1st Cir. 1991). It may grant such a motion only if the evidence, when viewed with appropriate deference to the jury's verdict, "could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment." Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994) (quoting PH Group Ltd. v. Birch, 985 F.2d 649, 653 (1st Cir. 1993)).

With regard to a motion for a new trial, the court may, pursuant to Fed. R. Civ. P. 59, grant such a motion if it is persuaded that "the verdict, though rationally based on the evidence, was so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice." Bogosian v. Mercedes-Benz of North America, Inc., 104 F.3d 472, 482 (1st Cir. 1997) (citations and quotation marks omitted). See also Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 717 (1st Cir. 1994) ("a district court may set aside a jury's verdict and order a new trial only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice."). Importantly, a district court may not disturb a jury's verdict simply because it might have decided the case differently. See Valazquez v. Figueroa-Gomez, 996 F.2d 425, 428 (1st Cir. 1993). Rather, the court must be persuaded that the jury's verdict is against the clear weight of the evidence and it

2

must conclude that overturning the verdict is necessary to prevent an injustice.

Alternatively, the court may grant a new trial if it determines that the damages awarded by the jury are excessive. See Conjugal Partnership v. Conjugal Partnership, 22 F.3d 391, 397 (1st Cir. 1994); Catullo v. Metzner, 834 F.2d 1075, 1082 (1st Cir. 1987).  However, the Court of Appeals for the First Circuit has cautioned that "the [jury's] assessment of damages cannot be disturbed unless the award exceeded any rational appraisal or estimate of the damages that could be based upon the evidence, or was grossly excessive, inordinate, shocking to the conscious of the court, or so high that it would be a denial of justice to permit it to stand."  Consolo v. George, 58 F.3d 791, 795 (1st Cir. 1995) (citation and quotation marks omitted).  See also Eastern Mtn. Platform Tennis, Inc. v. Sherwin-Williams Co., Inc., 40 F.3d 492, 502 (1st Cir. 1994) ("Under New Hampshire law a jury award of damages may be set aside only if it is 'conclusively against the weight of the evidence.'  This standard 'should be interpreted to mean that the verdict was one no reasonable jury could return.'") (citations omitted).

Should a court conclude that a jury's verdict is excessive, it may condition the denial of a motion for a new trial on the filing by plaintiff of a remittitur in a stated amount.  See Conjugal Partnership, 22 F.3d at 1082.  Under that circumstance,

3

however, the court must give the plaintiff the option of accepting remittitur or retrying the case.

## Discussion

At the close of trial, and following its deliberations, the jury returned a verdict in favor of Loenco with regard to the following counts:  Count 1 (breach of contract against the Town); Count 2 (quantum meruit against the Town); Count 3 (respondeat superior against the Town); Count 4 (intentional interference with contractual relations against HTA); and Count 7 (negligence against HTA).  With regard to the Town's counterclaim against Loenco for breach of contract, the jury returned a verdict in favor of Loenco.  The jury then awarded Loenco damages in the amount of $300,000.  Based upon the jury's responses on the special verdict form, the court entered judgment in favor of Loenco, holding that the Town and HTA were jointly and severally liable for $225,000 and the Town was separately liable for the remaining $75,000.  Defendants attack the jury's verdict on several grounds, as well as the court's allocation of damages.

A.    Allocation of Damages.

At the charging conference, all parties discussed and agreed to the terms of the special verdict form which was submitted to the jury.  The jury responded to the questions posed in that special verdict form as follows.  First, the jury found in favor of Loenco and against both defendants as to all counts submitted

4

to it.  It then awarded Loenco $300,000 in damages against the Town and $225,000 in damages against HTA.  Finally, in response to question 8 on the special verdict form, the jury indicated that the $225,000 award against HTA was included in the damages awarded against the Town.  Specifically, the jury responded as follows:

> 8.    Is any part of the amount awarded against Hoyle, Tanner & Associates included in the amount, if any, awarded against the Town?
>
> Yes __X__        No _____
>
> If you responded "Yes" to question 8, what amount of damages awarded against HTA is included in the damages you have awarded against the Town?
>
> $ 225,000

Special Verdict Form (document no. 138).  Accordingly, the court entered judgment as follows: "$225,000.00 against Hoyle, Tanner & Associates and the Town of Londonderry, jointly and severally, and an additional $75,000.00 against the Town of Londonderry." Judgment (document no. 140).

Curiously, HTA suggests that "the effect of the special verdict form and the damages assessed by the jury, is that although $300,000 was awarded against the Town, $225,000 of those damages are to be paid by HTA, leaving the Town singularly responsible for $75,000 in damages."  HTA's motion for judgment as a matter of law (document no. 143) at 2-3.  It seems to base its conclusion on the suggestion that the Town was not subject to

5

any tort claims and, therefore, could not be "jointly and severally" liable for any damages assessed against HTA.[1]

Some years ago, the Supreme Court of California nicely summarized the contexts in which "joint and several liability" has application.

> In cases involving multiple tortfeasors, the principle that each tortfeasor is personally liable for any indivisible injury of which his negligence is a proximate cause has commonly been expressed in terms of "joint and several liability."  As many commentators have noted, the "joint and several liability" concept has sometimes caused confusion because the terminology has been used with reference to a number of distinct situations. (See, e. g., Prosser, Law of Torts (4th ed. 1971) §§ 46, 47, pp. 291-299; 1 Harper & James, Law of Torts (1956) § 10.1, pp. 692-709.)  The terminology originated with respect to tortfeasors who acted in concert to commit a tort, and in that context it reflected the principle, applied in both the criminal and civil realm, that all members of a "conspiracy" or partnership are equally responsible for the acts of each member in furtherance of such conspiracy.
>
> Subsequently, the courts applied the "joint and several liability" terminology to other contexts in which a preexisting relationship between two individuals made it appropriate to hold one individual liable for the act of the other; common examples are instances of vicarious liability between employer and employee or

---

[1] The court need not dwell on this issue, as HTA has neither developed its argument in detail nor offered any legal support for its position.  Accordingly, its argument on this point may properly be deemed to have been waived.  See Local Rule 7.1(a)(2) (providing that every motion shall be "accompanied by a memorandum with citations to supporting authorities or a statement explaining why a memorandum is unnecessary.").  Cf. Ryan v. Royal Insurance Co. of America, 916 F.2d 731, 734 (1st Cir. 1990) ("It is settled in this circuit that issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned.").  Nevertheless, the court will briefly address the issue.

6

principal and agent, or situations in which joint owners of property owe a common duty to some third party. In these situations, the joint and several liability concept reflects the legal conclusion that one individual may be held liable for the consequences of the negligent act of another.

In the concurrent tortfeasor context, however, the "joint and several liability" label does not express the imposition of any form of vicarious liability, but instead simply embodies the general common law principle, noted above, that a tortfeasor is liable for any injury of which his negligence is a proximate cause. Liability attaches to a concurrent tortfeasor in this situation not because he is responsible for the acts of other independent tortfeasors who may also have caused the injury, but because he is responsible for all damage of which his own negligence was a proximate cause. When independent negligent actions of a number of tortfeasors are each a proximate cause of a single injury, each tortfeasor is thus personally liable for the damage sustained, and the injured person may sue one or all of the tortfeasors to obtain a recovery for his injuries; the fact that one of the tortfeasors is impecunious or otherwise immune from suit does not relieve another tortfeasor of his liability for damage which he himself has proximately caused.

American Motorcycle Ass'n. v. The Superior Court of Los Angeles County, 578 P.2d 899, 904 (Cal. 1978).

In this case, the jury found that the Town was liable to Loenco for its own conduct (breach of contract and quantum meruit) and for the conduct of its agent, HTA (respondeat superior). Based upon the jury's responses to the special verdict form, it appears that it concluded that the Town was liable to Loenco in the amount of $225,000 on the respondeat superior count. The remaining $75,000 awarded against the Town may, therefore, properly be viewed as representing the damages

7

attributable to the Town's breach of contract and Loenco's quantum meruit theory.

Thus, while it may not be strictly correct to say that the Town is "jointly and severally" liable for the $225,000, it is certainly appropriate to view its liability as "vicarious" or "derivative." See, e.g., Capital Transport Co. v. McDuff, 319 So.2d 658, 663 (Miss. 1975) ("[W]hen the liability of a principal for the tort of an agent, or that of the master for the wrong of a servant, has grown out of a tort in which the agent or servant is the sole actor, whence the liability of the principal or master is an imputed or constructive liability and has its sole basis in the doctrine of respondeat superior and in nothing else, the liability is joint and several, but they are not joint tort feasors."); Krukiewicz v. Draper, 725 P.2d 1349, 1351 (Utah 1986) ("[A]n employer's liability, which under the doctrine of respondeat superior has been termed "secondary" or "derivative," arises not as a result of any actual negligence by the employer, but solely because of the employer's employment of the employee. . . . Although the employer and employee are not common law tort-feasors, they are nonetheless each obligated for the same thing – total reparation of the damages to the victim. The derivative nature of the employer's liability is of no concern to the victim, and he can compel either the employer or the employee to compensate him for the whole of his damages.") (citations and internal quotation marks omitted).

In the end, Loenco may collect from the Town all or any portion of the $225,000 which represent the damages attributable to conduct of the Town's agent, HTA. The only limit to its recovery is that it may not recover more than: (1) a total of $300,000 from both defendants (i.e., it may not obtain "double recovery" for the same injury); or (2) a total of $225,000 from HTA.

To the extent that HTA seeks a judicial determination that Loenco may only recover $75,000 from the Town and must recover the balance of its judgment ($225,000) from HTA, that motion is denied. If Loenco so chooses, it may seek to recover the full amount of its judgment against the Town ($300,000) from the Town. To rule otherwise would give effect only to the jury's finding that the Town is independently liable to Loenco for $75,000. It would ignore the jury's finding that the Town is also liable, under a theory of respondeat superior, for the $225,000 in damages which Loenco sustained as a result of HTA's wrongful conduct, committed during the course and within the scope of its employment by the Town.

B. <u>Evidence of Lost Profits</u>.

Defendants next claim that Loenco failed to provide sufficient evidence of "lost profits" to warrant any award of damages in that regard. They base their argument upon the following interpretation of Loenco's claims and the proof offered

at trial. Loenco sought damages under its contract with the Town for sums it claimed were wrongfully withheld ($160,618). See Amended Complaint, para. 33. Defendants assert that payments which were made directly to Loenco's subcontractors (totaling $64,996) should be offset against the amount sought by Loenco, leaving a total of $95,622. Loenco also sought consequential damages of $63,136, representing the amount of the judgment secured against it by its bonding company. Accordingly, by defendants' calculation, the total contract damages sustained by Loenco was $158,758. Defendants claim that the remaining amount awarded by the jury ($141,242) must necessarily represent the jury's calculation of Loenco's lost profits.[2] Because defendants assert that Loenco failed to sustain its burden of proof with regard to lost profits, they move the court to reduce the jury's verdict by $141,242.

Under the governing law of New Hampshire, a party seeking compensation for lost profits must submit evidence that "the profits claimed were 'reasonably certain' in the absence of the breach." Hydraform Products Corp. v. American Steel & Alum. Corp., 127 N.H. 187, 197 (1985). See also Indep. Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 115 (1993). ("While the law does not require absolute certainty

---

[2]    Defendants' argument assumes, of course, that the jury did not award Loenco any damages for loss of goodwill, business reputation, or related tort damages. See Amended Complaint at paras. 47(c), 66(c).

10

for recovery of damages, we will uphold an award of damages for lost profits only if sufficient relevant data support a finding that profits were reasonably certain to result.") (citation omitted).  In interpreting New Hampshire law, however, the Court of Appeals for the First Circuit has noted that "there is a marked inclination to relax the [reasonable certainty] test where the defendant's conduct is willful."  Bezanson v. Fleet Bank-NH, 29 F.3d 16, 22 (1st Cir. 1994).

Although the court precluded Loenco from introducing expert testimony on the issue of lost profits (due to its failure to disclose its expert witness in a timely fashion), Loenco did introduce evidence regarding its profitability in the years both prior to and following its loss of bonding (which it sought to prove was the proximate result of defendants' wrongful conduct).

That Loenco suffered in real, monetary terms from the loss of its bonding capacity perhaps also seemed self-evident to the jury, and the evidence supported both that conclusion and the fair approximation of the losses suffered as found by the jury.  Defendants do not appear to be arguing that Loenco suffered no business income or profits losses arising from its loss of bonding capacity (and such an argument would not hold much water), but rather seem to suggest that that type of loss was not reasonably foreseeable.  Of course it is.  Municipal contracting authorities and consulting engineers know well that loss of

bonding capacity effectively sidelines any contractor intent on pursuing public works projects. That is precisely why a threat to notify a contractor's bonding company of alleged defaults in performance invariably weighs so heavily in resolving job site disputes — it's a big stick and virtually everyone in the public works sector of the construction industry well knows why. The consequences of Loenco's losing its bonding capacity were acutely foreseeable by defendants. The jury's award of damages resulting from Loenco having effectively been sidelined was reasonable, fair, and consistent with the evidence and the reasonable inferences to be drawn from it.

We, of course, do not know how the jury's deliberations on this element of damages evolved. However, a damages award related to lost profits was warranted by and supported by the evidence before the jury. Loenco had a long and steady history as a small family operated construction business that handled a predictable volume of niche business at a fairly predictable level of income and profit. The jury could reasonably have concluded (again, it probably seemed inferentially self-evident) that a small construction company operating in the field of public works projects would, for all practical purposes, be crippled by the loss of its ability to obtain construction related bonds. It would be a rare public entity indeed that accepted construction bids from contractors unable to post bonds assuring contract completion, payment of subcontractors and

12

material suppliers, etc. The evidence supported the inference, and the evidence supported the fact that defendants wrongly caused or substantially contributed to causing, the loss of Loenco's ability to secure bonding essential to carrying on its public works business.

In light of the evidence adduced at trial by Loenco regarding its average profitability in the years prior to its loss of bonding, a trier of fact, rationally appraising that evidence, could reasonably conclude that Loenco sustained lost profits in excess of $150,000 as a proximate result of defendants' wrongful conduct.

C.    Loenco's Negligence Claim.

HTA also asserts that it is entitled to judgment as a matter of law with regard to Loenco's negligence claim (Count 7), arguing that Count 7 fails to plead a cognizable cause of action. Moreover, HTA asserts that even if Count 7 states a viable claim, Loenco failed to establish that HTA was negligent or that it suffered any damages as a result of HTA's conduct. Finally, HTA says that Loenco failed to mitigate its damages by, for example, paying its subcontractors with cash on hand or by converting equity available in real property Loenco owned in Tyngsboro to cash, and applying those funds.

In its order dated February 2, 1998, the court addressed in detail HTA's claim that Count 7 failed to state a viable cause of action and held that: (1) HTA had failed to demonstrate that it was entitled to judgment as a matter of law with regard to Count 7; and (2) HTA could be liable for foreseeable economic losses incurred by Loenco as a result of HTA's negligent performance of its professional obligations. Loenco v. Town of Londonderry, No. 95-455, slip op. at 3-8 (D.N.H. February 2, 1998). Accordingly, further discussion of that issue is unwarranted. Moreover, Loenco did introduce sufficient evidence to permit a reasonable trier of fact to conclude that it suffered foreseeable damages as a proximate result of HTA's wrongful conduct. Finally, HTA's claims concerning Loenco's alleged failure to mitigate its damages are without merit; Loenco was not required to liquidate fixed assets, or borrow against them, or apply cash available for other business needs simply to cover defendants' wrongful interference with its right to receive a predictable income stream under its contract.

D.   The Economic Loss Doctrine.

Alternatively, HTA asserts that it is entitled to judgment as a matter of law with regard Count 7 because, in the absence of contractual privity, the economic loss doctrine precludes Loenco from recovering damages in the form of lost profits. For similar reasons, the Town claims that it is entitled to judgment as a

14

matter of law with regard to Loenco's respondeat superior claim (Count 3).[3]

The court previously addressed and rejected defendants' arguments regarding the economic loss doctrine in its order dated February 2, 1998. For the reasons set forth in that order, the court again rejects those arguments. See Loenco v. Town of Londonderry, No. 95-455, slip op. at 3-8 (D.N.H. February 2, 1998) (citing cases).

E.  Loenco's Quantum Meruit Claim.

The Town also asserts that Loenco failed to introduce sufficient evidence to support the jury's verdict on its claim for quantum meruit. The court disagrees. Loenco presented minimally sufficient evidence to establish by a preponderance that it expended substantial effort, both labor and materials, beyond the requirements of the contract (indeed at defendants' insistence) in an effort to conform, fix, or otherwise make compatible an apparently incompatible electrical control panel related to the odor control system (and that, in the end, the defendants sent the panel back to the factory for modifications,

_____

[3] The court instructed the jury that the Town may only be liable under a respondeat superior theory of liability if the jury first found that HTA was negligent in the performance of its duties while acting within the scope of its authority as the Town's agent. And, because the Town agrees with HTA and asserts that Loenco's negligence claims against HTA are barred by the economic loss doctrine, it reasons that Loenco's respondeat superior claim (which necessarily depends upon the viability of its negligence claim against HTA) must fail.

15

as Loenco had suggested at the outset).  The design failure, or specification errors, that gave rise to the incompatability problem was not the responsibility of Loenco.

F.    Intentional Interference with Contractual Relations.

Finally, HTA claims that it is entitled to judgment as a matter of law with regard to Count 4 (intentional interference with contractual relations).  With regard to Loenco's claim that HTA intentionally and tortiously interfered with the contractual relationship between Loenco and the Town, the court's instructions (written copies of which were provided to each juror) advised that:

> Not all interferences with contractual relations are unlawful or, as we sometimes say, "tortious."  To be tortious, the defendant's interference with the plaintiff's contractual rights must be either unjustified or otherwise "improper."  In order to prove that HTA's conduct was unjustified or improper, Loenco must demonstrate that HTA acted either in bad faith or with malice.  The term "malice" includes ill will, evil motive, an intent to injure, or a wanton or reckless disregard for the rights of others.
>
> Unless you find that Loenco has proved, by a preponderance of the evidence, that HTA's conduct in recommending that the Town terminate Loenco was either in bad faith or done with malice, you must return a verdict in favor of HTA with regard to Count 4.

Jury Instructions (document no. 137), at 17-18.

HTA does not challenge the substance of the court's instructions.  Instead, it asserts that Loenco failed to introduce any evidence from which a reasonable trier of fact

16

could have concluded that HTA acted with malice or in bad faith when it recommended that the Town terminate its contract with Loenco.

Notwithstanding HTA claims to the contrary, a reasonable trier of fact, crediting the evidence and testimony introduced by Loenco, could certainly have concluded that HTA acted in bad faith and/or with malice toward Loenco when, among other things, it: dramatically and without just cause reduced pay estimate number 7; counseled the Town to withdraw the painting contract from Loenco; purposefully contacted Loenco's subcontractors to determine whether they had been paid when it knew that they had not (in large part because defendants had acted to keep Loenco itself from being paid); and notified Loenco's bonding company of Loenco's failure to pay subcontractors (again, when it knew Loenco was unable to pay those subcontractors since Loenco's own pay requisitions had been substantially and unreasonably cut). The jury could have reasonably concluded as well that defendants acted as they did to coerce contract concessions from Loenco. There was also evidence from which a reasonable juror could have inferred contract interference by the State of New Hampshire and defendant's wrongful capitulation to entreaties from state employees to put undue pressure on Loenco with a view to coercing contract concessions.

**Conclusion**

17

For the foregoing reasons, the court concludes that Loenco introduced sufficient evidence on each of its claims to support the jury's verdict. Additionally, the damages awarded by the jury are entirely consistent with evidence presented at trial. In any event, the jury's award is not so "grossly excessive, inordinate, shocking to the conscious of the court, or so high that it would be a denial of justice to permit it to stand." Consolo v. George, 58 F.3d at 795.

Accordingly, the Town's motion for a new trial (document no. 141), the Town's motion for judgment as a matter of law (document no. 142), and HTA's motion for judgment as a matter of law (document no. 143) are denied.

**SO ORDERED**

                                      _____
                                      Steven J. McAuliffe
                                      United States District Judge

December 14, 1998

cc:  Martha E. Howe, Esq.
     Andrew W. Serell, Esq.
     Jeffrey L. Alitz, Esq.