Seale v. Riordan                          CV-98-481-JD  03/01/00
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Michael A.R. Seale

     v.                                Civil No. 98-481-JD
                                       Opinion No. 2000 DNH 051
Denis Riordan, et al.


                            O R D E R


     The plaintiff, Michael Seale, brought claims against the

defendants under 42 U.S.C. § 1983 and Bivens v. Six Unknown Named

Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971),

alleging that he received inadequate medical care while in

detention at the Hillsborough County House of Corrections.  The

court granted summary judgment for the defendant James O'Mara,

Superintendent of the Hillsborough County Department of

Corrections, in its order dated January 19, 2000.  Now the

federal defendants Denis Riordan, Deputy District Director of the

United States Immigration and Naturalization Service ("INS"), and

Allan Greenbaum, Supervisor/Detention Enforcement Officer with

the INS, move for summary judgment (document no. 79), and Seale

objects.


                        Standard of Review

     Summary judgment is appropriate when the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is only genuine if there is sufficient evidence to permit a reasonable jury to find for the nonmoving party, while a fact is only material if it has the potential to affect the outcome of the suit under the applicable law. See Bourque v. FDIC, 42 F.3d 704, 708 (1st Cir. 1994) (citing NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28, 32 (1st Cir. 1994)).

In response to a properly supported motion for summary judgment, the nonmoving party bears the burden to show a genuine issue for trial by presenting significant material evidence in support of the claim. See Tardie v. Rehabilitation Hosp., 168 F.3d 538, 541 (1st Cir. 1999). The record evidence is taken in the light most favorable to the nonmoving party. See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999). Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## Background

### I.    Facts Relating to Seale's Medical Care

On or about January 7, 1998, Seale, who was in the custody of the Immigration and Naturalization Service ("INS"), was sent to be detained at the Hillsborough County Department of Corrections ("HCDOC"), where he remained until August of 1998. On January 8, 1998, Seale completed an intake form concerning his medical history. He reported that he took the drug coumadin, an anticoagulant, on a daily basis since September of 1997 to treat deep vein thrombosis. He also reported a history of "h/A" that becomes worse if he misses a dose of coumadin. It is unclear from the record what "h/A" means.

Seale claims that the first instance of inadequate medical care occurred when he missed his daily dose of coumadin on January 7, the date of his transfer to HCDOC, allegedly because he was not given the intake form until January 8. The medical notes from Seale's file indicate that on January 7, HCDOC officials were aware of Seale's coumadin prescription, although the notes do not indicate whether Seale received his daily dose on January 7. Seale does not say whether he verbally requested a dose of coumadin on January 7, nor does he specifically allege that anyone refused to give him his medication.

Seale alleges that on a number of other occasions during his

3

stay at HCDOC he was denied his daily dose of coumadin. Seale identified two nurses, "Nurse Roy" and "Nurse Trish," whom he alleges offered him coumadin that was crushed and contaminated by residue that he did not recognize but believed to be from a previous patient's medication. Consequently, he refused on these occasions to take the medicine, and he claims that they refused to replace it. In addition, Seale claims that "Nurse Trish" sometimes forgot to bring Seale his coumadin.

The medical notes indicate that roughly once a month, Seale's blood was drawn and tested, after which a physician, Dr. Stein, reviewed the lab results and indicated that Seale's coumadin prescription should continue. The notes do not specifically reveal whether Seale was given coumadin on a daily basis. On March 10, 1998, the notes say that Seale refused to take his medications, including coumadin, stating "he doesn't want these anymore." The notes also say that Seale was "aware of possible complication" resulting from his refusal to take the drugs. On April 24, 1998, the medical notes say that Seale was to stop receiving coumadin a few days before he was scheduled to have surgery, and was to resume after his surgery.

In addition to the alleged refusals to provide medication, Seale claims that his requests to see a physician for rectal pain and bleeding were ignored for approximately two months beginning

4

in late January of 1998. The medical notes and affidavits indicate that the first time Seale met with a physician was January 27, 1998, for a physical. The notes make no mention of a complaint or diagnosis of rectal pain or bleeding. The notes reflect that on February 14, 1998, a "sick slip" was recorded that reported Seale's rectal bleeding. Seale claims that this was not the first time he had complained of pain and bleeding. However, Seale does not indicate to whom he complained earlier or who denied his earlier requests to see a physician.

Seale saw Dr. Stein on February 17, 1998, and was examined and treated for his rectal distress. He had follow-up appointments with Dr. Stein on March 6 and March 20, 1998. On April 13, 1998, Seale visited a surgeon, after which he was scheduled for rectal surgery on May 1, 1998. Seale saw Dr. Stein again on April 24, 1998, and underwent surgery on May 1, 1998.

Seale claims that between May 1 and June 4, 1998, and between June 9 and July 7, 1998, he never saw Dr. Stein. Seale does not indicate that he requested to see a doctor during these periods, or that anyone denied such a request. The medical records indicate that Dr. Stein saw him on May 5, 8, and 26. Seale saw the surgeon on May 14 and again on June 4, 1998, at which time Seale says the surgeon advised that he might need a second surgery but that other treatments would probably obviate

the need for further surgery.  On July 24, 1998, Dr. Stein examined Seale, who was still complaining of rectal pain.  On August 18, 1998, Seale was discharged from HCDOC.

II.  <u>Facts Relating to Federal Defendants' Knowledge and Actions</u>

On January 30, 1998, Seale wrote a letter to the "Supervisor in Charge" at the INS office in Boston.  In the letter, he complained that he had missed three consecutive daily doses of coumadin and that his blood had not been drawn since arriving at HCDOC.  He also requested a transfer to another facility.  Riordan did not become aware of this letter until Seale filed this lawsuit.

In June of 1998, Riordan received a letter from Rebecca Feldman of the Boston College Immigration & Asylum Project.  Feldman wrote that Seale had complained to her of contracting an infection at HCDOC from soiled underwear.  He reported receiving inadequate care for his infection, missing doses of coumadin, and missing necessary blood monitoring.  Riordan directed Greenbaum to investigate Seale's allegations.

Greenbaum went to HCDOC to investigate, and on June 12, 1998, he sent Riordan a memorandum summarizing his findings.  Greenbaum reported that he toured the property room and laundry facilities at HCDOC and interviewed the housekeeping supervisor

at the jail.  Apparently satisfied by the routine procedures in place at HCDOC, Greenbaum believed that Seale had not been issued soiled underwear upon arrival at the jail, as Seale claimed. Greenbaum also reviewed Seale's medical records and reported that Seale was seen by a physician three days after the "sick slip" mentioning rectal bleeding was submitted, received follow-up care, was operated on and received post-operative care.  Finally, Greenbaum noted the dates on which Seale's blood had been drawn to monitor his coumadin dosage.  Riordan read Greenbaum's memorandum and concluded that HCDOC's laundry procedures posed no risk of harm to inmates and that Seale was receiving appropriate medical care.

Feldman wrote Riordan a second letter in July of 1998.  She wrote that Seale had complained that he was denied access to a doctor, his blood monitoring had been delayed in June, he was taken off coumadin when he had surgery, and his coumadin dosage level was changed.  Feldman also wrote that Seale complained of being kept in the general population and his requests to return to the medical unit were refused.  If kept in the general population, he required privacy to properly treat his rectal condition, and this was not being arranged.

In response to this letter, Riordan contacted O'Mara and arranged to meet with him and other HCDOC and INS officials to

discuss Seale's situation. After this meeting, which occurred on July 22, 1998, Riordan was satisfied that Seale was receiving adequate care at HCDOC. Riordan felt it unnecessary to transfer Seale to another facility, though he could have done so. Riordan referred Seale's matter to the INS Office of Internal Audit for an independent investigation, but that office determined it did not have jurisdiction to investigate the matter.

## Discussion

As a pretrial detainee, Seale's claims of inadequate medical care arise from his constitutional due process right to be free of punishment. See Bell v. Wolfish, 441 U.S. 520, 535-37 (1979). To establish that this right was violated, Seale must show that he had a serious medical need, and that this need was treated with deliberate indifference "tantamount to an intent to punish." Elliott v. Cheshire County, 940 F.2d 7, 10 (1st Cir. 1991) (applying standard to detainee claiming due process violation); see also DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (applying standard in Eighth Amendment context).[1]

---

[1]The standard for deliberate indifference to medical need is essentially the same in the due process and Eighth Amendment contexts. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983); Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17-18 (1st Cir. 1995) (analyzing

8

Under a theory of supervisory liability, a supervisor may be held liable only if a subordinate violated the plaintiff's constitutional rights.  See Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998).  In its order dated January 19, 2000, the court held that on the facts before it on summary judgment pertaining to Seale's medical care, there was no triable issue that anyone acted with deliberate indifference to Seale's medical needs.  The court is presented with the same facts on this motion for summary judgment.  Therefore, under a theory of supervisory liability, Riordan and Greenbaum are entitled to summary judgment.

As the defendants themselves point out, it is unclear from the record whether Riordan and Greenbaum had supervisory authority over the medical personnel who cared for Seale at HCDOC.  A more appropriate analysis might be whether Riordan and Greenbaum themselves acted with deliberate indifference to Seale's medical needs -- Riordan by failing to transfer Seale to another facility, and Greenbaum by failing to thoroughly investigate Seale's allegations.  "To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk,

pretrial detainee's claim using Eighth Amendment deliberate indifference standard).

9

and (3) his failure to take easily available measures to address the risk." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) (citing Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir.1992)); see also Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994) (discussing standard for deliberate indifference in Eighth Amendment context).

There is insufficient evidence to show that Seale was at a grave risk of harm during his confinement at HCDOC. The medical records and affidavits indicate that doctors and nurses regularly and promptly saw him in response to his complaints. They ordered and carried out a course of treatment and provided follow-up care. The records show that nursing staff monitored Seale's blood on roughly a monthly basis and that his coumadin prescription was maintained. There is no evidence that Seale ever suffered adverse effects from an improper dosage or failure to provide coumadin. Even if Seale did miss occasional doses of his medication, the record fails to show that such negligence would have put Seale in grave danger, or that the defendants had any reason to know he would be in danger.

Furthermore, Riordan and Greenbaum took significant measures to address Seale's allegations as soon as they became aware of them. Riordan never received Seale's letter sent in January of 1998, and so was not aware at that time of Seale's complaints.

10

Riordan requested Greenbaum to investigate within days of receiving Feldman's first letter in June of 1998. Greenbaum went to HCDOC, explored the merits of Seale's claims, and reported back to Riordan promptly with his findings. Riordan acted quickly again when he received Feldman's second letter, addressing the allegations personally with HCDOC officials and staff. For these reasons, the court finds that there is no triable issue of whether Riordan or Greenbaum acted with deliberate indifference to Seale's medical needs.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is granted (document no. 79). The clerk shall enter judgment and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

March 1, 2000

cc:  Michael Adrian Ricardo Seale, pro se
     T. David Plourde, Esquire

11